MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

SUSAN E. BADGER (CSBN 124365)
JEFFREY RABKIN (CSBN 189798)
Assistant United States Attorneys

450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone: (415) 436-7167
Facsimile: (415) 437-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD J. MESLER, <br><br> Defendant. | No. CR 09-0404 (SI) <br><br> **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE BASED ON SUBSTANTIAL ASSISTANCE PURSUANT TO U.S.S.G. § 5K1.1** <br><br> Date: March 11, 2011 <br> Time: 11:00 a.m. <br> Place: Courtroom 10 |

## INTRODUCTION

On April 30, 2009, defendant Richard J. Mesler pleaded guilty to an information charging him with wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349, pursuant to a cooperation plea agreement. The United States, in turn, agreed that if Mesler cooperated fully and truthfully, provided substantial assistance, and otherwise complied fully with the plea agreement, it would file a motion explaining the

U.S. SENTENCING MEMO &
MOT. FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1
[CR 09-0404 SI]

nature and extent of his cooperation and recommending a downward departure.

The United States has evaluated Mesler's cooperation and assistance as well as his compliance with the plea agreement and hereby moves for a downward departure pursuant to section 5K1.1 of the United States Sentencing Guidelines. The United States moves for this departure because Mesler has cooperated in good faith and rendered substantial assistance by providing truthful and complete information in connection with the government's investigation and successful prosecution of a mortgage fraud conspiracy led by defendant Judy Yeung. Taking into account Mesler's substantial assistance and factors set out in 18 U.S.C. § 3553(a), the United States recommends that the Court impose a sentence of one day in custody, to be followed by five years supervised release with a condition that Mesler serve six months' home detention. In addition, Mesler has a restitution obligation of $465,519.15.

## ANALYSIS

### I. THE OFFENSE CONDUCT, PRESENTENCE REPORT AND GUIDELINES CALCULATION

#### A. Mesler's Offense Conduct

Mortgage brokers Richard J. Mesler and Alex Yee helped defendant Judy Yeung fraudulently to obtain multiple mortgage loans. Yeung's fraud included using five separate straw buyers and submitting materially false information to six mortgage lenders about the borrowers' credit-worthiness. With the cooperation of both Mesler and Yee, among others, Yeung was convicted after trial of multiple counts of mortgage fraud. She was also convicted of three counts of witness tampering in connection with her efforts to persuade two of the straw buyers to lie to the FBI.

In relation to three of the five loans, Yeung recruited Alex Yee, a mortgage processor who worked for a San Francisco mortgage brokerage business, to submit the loan applications containing false information to lenders. Yee, in turn, recruited his co-worker, Richard Mesler, to assist in two of the transactions. Between approximately January and March 2006, Mesler helped Yeung and Yee obtain mortgage loans for straw

buyers Ken Ferrari and Lawrence Phung. As Mesler knew, Yeung had an understanding with Ferrari and Phung whereby she would use their names and credit scores to apply for mortgages on two separate residential properties and they would not have to make any down payments or mortgage payments; instead, those and all other expenses would be paid by Yeung. In addition, the straw buyers would not need to reside in, or take possession of, the properties in question. In exchange for the use of their names and good credit, and willingness to participate in the scheme, Yeung promised to pay the straw buyers a fee ranging from $10,000 to $20,000 per property. The straw buyers were also promised that after a short period of time, their names would be removed from the property titles.

    Mesler fully participated with Yee in processing the loan applications for the Ferrari and Phung loans. In doing so, Mesler knowingly and with intent to deceive transmitted fraudulent loan applications to financial institutions that he knew at the time contained false and inflated information intended to enhance the likelihood that the financial institutions in question would approve the loan applications. For example, the fraudulent loan applications contained false employment information, false and inflated income and bank account information as well as false representations as to the intent of the straw buyers to occupy the residence. In connection with the Ferrari loan application, Mesler paid a certified public accountant for a false letter that purported to verify Ferrari's employment information. Mesler was well aware that the mortgage lenders would not have approved the loans in question had the straw buyers disclosed their true and accurate financial and employment information.

    In the summer of 2007, Yeung sought out Mesler's and Yee's assistance again in order to refinance her home at 261 San Fernando Way in San Francisco. By this time, both Mesler and Yee had decided that they did not want anything more to do with Yeung, and stopped assisting her. Yeung went on to obtain two loans in excess of $1 million by using another straw buyer, Dinh Lam. By doing so, she avoided foreclosure proceedings

U.S. SENTENCING MEMO &
MOT. FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1
[CR 09-0404 SI]                                    3

on her home in San Francisco. Yeung subsequently went into default on those loans and the lenders foreclosed. Yeung also defaulted on the Ferrari and Phung loans, resulting in a loss of $465,519.[1]

### B. Applicable Guidelines Calculations

The United States concurs with the description of the offense conduct and the Guidelines calculations set forth in the PSR, with the exception that the government does not view Mesler as eligible for a two-point "minor role" adjustment under U.S.S.G. § 3B1.2(b). Pursuant to the plea agreement, the government agrees that Mesler's total offense level is 18, that he falls within Criminal History Category I, and that the applicable Guidelines range is 27 to 33 months.

## II. MESLER'S SUBSTANTIAL ASSISTANCE PURSUANT TO § 5K1.1

Section 5K1.1 of the United States Sentencing Guidelines provides that upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Court may depart from the guidelines. Section 5K1.1 enumerates five non-exclusive factors that the Court may consider. The United States has evaluated Mesler's assistance and has determined that it qualifies as substantial assistance pursuant to the factors listed under Section 5K1.1, and therefore warrants a departure from the applicable sentencing guideline range.

When Mesler was first contacted by FBI agents, he cooperated and provided what was later determined to be truthful information. In doing so, he candidly admitted his participation and wrong-doing and exposed himself to criminal prosecution. At the time, Mesler was not represented by counsel and he did not ask the agents for immunity or reduced-sentence assurances. Over the course of the subsequent investigation and

---

[1] The losses attributable to the Yeung's fraudulent loans were fully litigated at an evidentiary hearing prior to Yeung's sentencing, and the Court found that the government had introduced sufficient evidence to support its loss calculations.

prosecution of this matter, the information provided by Mesler continued to be corroborated. At no point did the government learn any information that undermined what he related about his dealings with Yeung, Yee, and the straw buyers.

Mesler's information was extremely useful in that he had specific recollections about events and conversations with Judy Yeung. Moreover, he fully corroborated the other cooperating broker, Alex Yee, as well as straw-buyers Ferrari and Phung. The government disclosed Mesler's *Jencks* material before trial, in addition to his cooperation agreement. Mesler attended several debriefing and trial prep sessions, including sessions after the trial had started. He was fully cooperative throughout the process. Ultimately, toward the end of the government's case-in-chief, and after Yee testified, the prosecutors made a decision not to call Mesler as a witness. That decision was not the result of any lack of commitment on Mesler's part; it was a purely tactical decision. Mesler's cooperation, his willingness to testify, and the fact that his prospective testimony corroborated several government witnesses in all material ways, significantly enhanced the factual core of the government's case-in-chief.

### III.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government concurs with the U.S. Probation Officer's recommendation that the Court impose a sentence of one day in custody, to be followed by five years of supervised release with six months home confinement.[2] Additionally, the government recommends that the Court order Mesler to make restitution. This sentence is appropriate in light of both Mesler's substantial assistance and the factors enumerated in Title 18, United States Code, Section 3553(a).

#### A.   Mesler's Substantial Assistance and Relative Culpability

As noted above, Yeung was convicted after a jury trial of multiple counts of mortgage fraud as well as three counts of obstruction of justice. The Court sentenced

---

[2] Because the offense of conviction is a Class B felony, a sentence of straight probation is not authorized. *See*, 18 U.S.C. § 3561(a)(1).

U.S. SENTENCING MEMO &
MOT. FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1
[CR 09-0404 SI]                                                5

Yeung to a term of 24 months in prison. At sentencing, the Court found that the government had proved the $1.3 million loss, and also applied sentencing enhancements for Yeung being an organizer and leader of the mortgage fraud scheme. Accordingly, the applicable base offense level for Yeung was level 29, and her guideline range was 87 to 108 months. Over the government's objection, the Court granted a downward departure to a sentence of 24 months. The Court based that reduction on Yeung's age (age 59); her heart condition; and an assessment that Yeung had had some bad experiences with men in her life. The Court's determination that a 24-month sentence for Yeung was "sufficient, but not greater than necessary" under Section 3553(a) factors into the government's sentencing recommendation for defendant Mesler.

By various measures, Yeung was significantly more culpable than Mesler. For example, Yeung gained far more through her fraudulent scheme than Yee or Mesler. Through her fraud against six different lenders, Yeung caused losses of approximately $1.3 million. Mesler, on the other hand, participated in defrauding two lenders, with a resulting loss of $465,519. The government established at trial that as a result of her fraudulent scheme, Yeung realized financial benefits of over $600,000. Mesler and Yee earned only a few thousand dollars in commissions on the Yeung loans.

After Yeung's fraud was detected, she instructed straw buyers Andy Louie and Kenneth Zhang to lie to the FBI about her involvement in the loans. After indictment, the government gave Yeung the opportunity to cooperate in its ongoing mortgage fraud investigations; Yeung declined to do so. After conviction, Yeung expressed no remorse or regret for her conduct and its impact on others.

By contrast, when initially approached by investigators in this matter, Mesler was fully cooperative. He not only admitted his own wrongful conduct without seeking assurances that what he said would not be used against him, he also agreed to cooperate in the government's investigation. Mesler pled guilty to a felony, continued to cooperate and assist the government, and has expressed remorse for his participation in the

U.S. SENTENCING MEMO &
MOT. FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1
[CR 09-0404 SI]                                6

dishonest conduct.

Yeung received a reduction of approximately 73% from the low end of her 87 to 108 month guideline range. A similar reduction from the low end of Mesler's sentence would result in an approximately seven-month sentence. Taking into account proportionality and fairness, the fact that Yeung was clearly the leader of the mortgage fraud conspiracy, as well as Mesler's substantial assistance, a sentence of less than seven months in custody is an appropriate sentence for Mesler.

**B. Analysis of Section 3553(a) Factors**

The government's recommendation that the Court impose a sentence of one day in custody, followed by five years of supervision with six months home confinement is based on the considerations described above, as well as analysis and application of the factors set forth in Section 3553(a). In terms of history and characteristics of the defendant, Mesler was recently laid off as a contract employee at Dell Computers, but has already found another job. He provides child support for his five-year old son, with whom he has a close relationship and spends every weekend. His prior criminal history has to do with vehicle offenses and is minor. On the other hand, Mesler served in the United States Navy, and received an honorable discharge.

As discussed above, Mesler has fully accepted responsibility for his conduct and has expressed regret for engaging these illegal activities. As a result of this case, Melser has sustained a felony conviction and will be carrying a significant restitution obligation – both of which are substantial sanctions. Those sanctions, along with the recommended sentence, are sufficient, but not more than necessary to address the need to punish Mesler for his offense conduct and to deter others from committing similar crimes. Further, the recommended sentence appropriately reflects the concerns of Section 5K1.1, that is, that individuals who cooperate with the government by providing substantial assistance in a timely way be provided meaningful leniency. Finally, the sentence would enable Mesler to maintain his employment, his relationship with his young son, and financial support for

U.S. SENTENCING MEMO &
MOT. FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1
[CR 09-0404 SI]                             7

his son.

## CONCLUSION

For the reasons set forth above, the government respectfully asks that the Court impose a sentence of one day in custody, to be followed by a five year term of supervised release with six months of home confinement. The government further recommends that the Court enter a restitution order of $465,519.15, with Mesler jointly and severally liable with defendant Judy Yeung for the obligation. Finally, the Court is required to impose a special assessment of $100.

DATED: March 3, 2011

Respectfully submitted,

MELINDA HAAG
United States Attorney

SUSAN BADGER
JEFFREY RABKIN
Assistant United States Attorneys